## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

TFORCE WORLDWIDE, INC.,          )
                                 )
                  Plaintiff,     )
                                 )
        v.                       )          1:21cv722
                                 )
ESC BRANDS, LLC,                 )
                                 )
                  Defendant.     )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge for a recommendation on Plaintiff's "Motions for Summary Judgment" (Docket Entry 27 (the "Summary Judgment Motion"); see also Docket Entry 28 (Brief in Support)). For the reasons that follow, the Court should grant the Summary Judgment Motion in part, and deny the Summary Judgment Motion in part as moot.

## I. BACKGROUND

TForce Worldwide, Inc. ("TForce") commenced this action against ESC Brands, LLC ("ESC") for breach of contract and unjust enrichment arising out of ESC's business relationship with another entity, RR Donnelly Logistics Services Worldwide, Inc. ("RR Donnelly"). (Docket Entry 1 (the "Complaint").) According to its brief opposing summary judgment, ESC "sourc[es] and suppl[ies] tested and certified antimicrobial and antiviral products such as sanitizing wipes . . . ." (Docket Entry 29 at 1.) Per TForce, RR Donnelly, in turn, acted as a freight forwarder, "work[ing] with

agents in foreign countries to facilitate the shipment of goods

. . . and arrange for their shipment from consignors." (Docket

Entry 28 at 4.)  The record reflects that TForce purchased certain

RR Donnelly assets, including its accounts receivable, in November

2020.  (<u>See</u> Docket Entry 28-14 at 8-71 (the Asset Purchase

Agreement ("APA")).)

## A. Three Shipments at Issue

ESC sought to procure and ultimately resell hand sanitizing

wipes during the summer and fall of 2020.  (<u>See</u> Docket Entry 28-1

at 6 (deposition testimony of ESC's managing member reflecting

beginning of relationship with RR Donnelly).)[1]  Several entities

participated in this arrangement: (1) Landy International, a China-

based company, manufactured the wipes (<u>see</u> Docket Entry 28-2 at 18-

19; Docket Entry 28-14 at 2), (2) RR Donnelly arranged for shipment

of those wipes (<u>see</u> Docket Entry 28-1 at 10-11; Docket Entry 28-3

at 2), (3) Honor Lane Shipping provided the shipping containers and

physically transported the wipes from China to the United States

(<u>see</u> Docket Entry 28-3 at 4), (4) ESC received the wipes in

California and North Carolina for resale (<u>see</u> Docket Entry 28-1 at

11, 17), and (5) Harry Long acted as ESC's Customs agent,

responsible for determining the applicable tariff for the shipments

of wipes (<u>see</u> Docket Entry 28-12 at 1 (Customs Power of Attorney

---

1 For consistency, pin cites to all exhibits will refer to the
pagination of the PDF, rather than any pagination in the exhibit,
such as the deposition transcript referenced here.

2

Agreement)).  The three shipments at issue departed China in July 2020, reached U.S. ports of entry in August 2020, and arrived at ESC's facilities in September and October 2020.  (See Docket Entry 28-1 at 31-32, 39, 45 (deposition testimony of ESC's managing member discussing timing of shipments); Docket Entry 28-6 (ESC demand letter reflecting "Water Damaged Cargo" from "September & October 2020").)

According to the Complaint, ESC failed to pay RR Donnelly certain freight-related charges in violation of an oral agreement between ESC and RR Donnelly.  (See Docket Entry 1 at 3, 6.)  As a result of the APA with RR Donnelly, TForce asserts entitlement to those sums.  (See Docket Entry 28 at 11-12.)  In its Amended Answer and Counterclaims, ESC contends that RR Donnelly breached the same oral agreement because the shipments of wipes at issue arrived in unusable condition.  (See Docket Entry 17 at 16; see also Docket Entry 29 at 2 (describing wipes as "soiled, wet, compressed, damaged, show[ing] evidence of sea salt and [] full of sea lice").)  Through the APA between TForce and RR Donnelly, ESC asserts that TForce assumed responsibility for RR Donnelly's liability for that breach.  (See Docket Entry 17 at 16; Docket Entry 29 at 3.)

## B. Overpayment of Tariffs

Concurrent with the shipments of wipes, RR Donnelly paid corresponding tariffs on ESC's behalf so that U.S. Customs and Border Protection ("Customs") would release the shipments after

3

they arrived at a United States port of entry. (See Docket Entry 28-2 at 8; Docket Entry 28-14 at 3-4.) Harry Long, ESC's Customs agent, determined the relevant tariff, but RR Donnelly then prepaid the tariff, consistent with apparently industry-standard practices. (See Docket Entry 28-2 at 9-12.) ESC would then reimburse RR Donnelly for the tariff payments. (See Docket Entry 28-1 at 59 (deposition testimony of ESC managing member reflecting that RR Donnelly "actually invoiced" ESC for tariff payments).)

According to the Complaint and Summary Judgment Motion, RR Donnelly overpaid Customs due to an incorrect tariff classification by Harry Long. (See Docket Entry 1 at 1-2; Docket Entry 28 at 9-10.) ESC discovered the error, and only reimbursed RR Donnelly for the value of the correct tariff classification (approximately 25% less than RR Donnelly had paid to Customs). (See Docket Entry 28-1 at 58, 60; Docket Entry 28-2 at 18.) Harry Long then corrected the tariff classification, but Customs issued a refund to ESC instead of RR Donnelly. (See Docket Entry 28-1 at 57; Docket Entry 28-2 at 8.) Because RR Donnelly overpaid Customs, not ESC, the Complaint alleges that ESC was unjustly enriched, to the tune of $439,760.07, as a result of the refund. (Docket Entry 1 at 1-2.)[2] And, as a result of the APA between TForce and RR Donnelly, the Complaint alleges that ESC should return this sum to TForce. (See id.) ESC

---

2 In its Summary Judgment Motion, TForce revised this figure to $436,381.19. (See Docket Entry 28 at 10.)

apparently does not dispute that RR Donnelly overpaid Customs, that ESC received the refund instead of RR Donnelly, or that it should return this sum (see Docket Entry 28 at 10; Docket Entry 28-1 at 56-57; Docket Entry 29 at 3-4), but instead contends that it "has already paid RR Donnelly a portion of these overcharges" (Docket Entry 29 at 3), and retains the right "to set off its [counter]claims" against this sum (id. at 4).

### C. TForce Purchases RR Donnelly Assets

Subsequent to the shipments and tariff overpayment, TForce, also a freight forwarder, entered into an agreement (the APA) with RR Donnelly whereby TForce acquired certain assets of RR Donnelly. (See Docket Entry 28-14 at 8, 12.) The APA established a closing date of November 2, 2020. (Id. at 30-31 (APA § 5.1).) The assets TForce purchased through the APA included the "Accounts Receivable" of RR Donnelly "with respect to the customers of the Business listed on" an appendix to the APA. (Id. at 13 (APA § 1.1(a)(ii)).) The APA's definition of "Accounts Receivable" includes any "rights to payment from customers . . . ." (Id. at 48 (APA Art. X - Definitions).) The appendix of customers for which TForce acquired RR Donnelly's Accounts Receivable includes "ESC Brands LLC." (Id. at 69.) Consequently, as of November 2, 2020, TForce acquired RR Donnelly's rights to payment from ESC, as ESC has conceded (see Docket Entry 29 at 3 (acknowledging that TForce acquired RR

5

Donnelly assets, but asserting that TForce also assumed RR Donnelly liabilities through the APA)).

As part of the APA, RR Donnelly also expressly retained certain liabilities. (Docket Entry 28-14 at 14-16 (APA § 1.2).) Specifically, RR Donnelly "retain[ed] and [is] responsible for . . . any Liability in respect of any claims, obligations of any kind or character whatsoever . . . arising out of, relating to or otherwise in respect of the operation of the Business or the Purchased Assets to the extent such claims . . . relate[] to such operation on or prior to the Closing Date." (Id. at 15-16 (APA § 1.2(b)(iv)).) Although TForce did assume liability for certain contracts, that assumption of liability only extends, as relevant here, "to the operation of the Business after" November 2, 2020. (Id. at 14-15 (APA § 1.2(a)(ii)).) RR Donnelly therefore retained liabilities arising out of its operations prior to the closing date, whereas TForce assumed liabilities arising out of the operation of the business after the closing date, but only for *some* contracts. (See generally id.)

### D. The Instant Motion

TForce moves for partial summary judgment on its unjust enrichment claim for the alleged Customs overpayment. (See Docket Entry 28 at 13.) TForce also moves for summary judgment on ESC's affirmative defenses of setoff and recoupment. (Id.) In addition, TForce moves for summary judgment on ESC's counterclaims for breach

6

of contract and negligence. (Id.) Finally, TForce moves for partial summary judgment on ESC's damages claim, limited to ESC's request for consequential damages and lost profits. (Id.)

## II. DISCUSSION

### A. Summary Judgment Standards

"The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The movant bears the burden of establishing the absence of such dispute. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In analyzing a summary judgment motion, the Court "draw[s] all reasonable inferences in favor of the non-moving party. Emmons v. City of Chesapeake, 982 F.3d 245, 250 (4th Cir. 2020). In other words, the nonmoving "party is entitled 'to have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, [and] all internal conflicts in it resolved favorably to him.'" Miller v. Leathers, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc) (brackets in original) (quoting Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979)).

7

However, "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position" does not suffice. Anderson, 477 U.S. at 252. And "[u]nsupported speculation is not sufficient to defeat a summary judgment motion." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Rather, the Court must "find that a reasonable jury could return a verdict for [the nonmoving party in order for] a genuine factual dispute [to] exist[] and summary judgment [to be] improper." Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 959 (4th Cir. 1996).

## B. TForce's Standing

Before addressing the substance of TForce's Summary Judgment Motion, the Court must consider an argument raised both in ESC's Amended Answer and in its Brief in Opposition to the Summary Judgment Motion: that TForce lacks standing to bring claims against ESC. (Docket Entry 17 at 14; Docket Entry 29 at 4-6.) ESC's standing argument takes issue with a perceived pleading defect. As ESC states in its Brief in Opposition, "[TForce] treats [itself] as the original party to the dispute and contract rather than . . . RR Donnelly . . . [and] nowhere in the Complaint does [TForce] even mention that it has standing or [its status] as a third-party assignee." (Docket Entry 29 at 5.) ESC contends further that "[TForce] cannot plead a direct breach of contract case then switch

8

to an assignee standing case." (Id. at 6.)[3] ESC therefore does not argue that TForce lacks standing; rather, ESC argues that TForce's failure in its Complaint to discuss its acquisition of rights through the APA fatally undermines its Summary Judgment Motion.

ESC's "standing" argument lacks merit for several reasons. First, ESC has not disputed the validity of the APA and has not denied TForce's acquisition of certain assets from RR Donnelly, including its Accounts Receivable. (Docket Entry 17 at 15 (acknowledging validity of APA), 16 ("TForce is believed and alleged to be the successor in interest to RR Donnelly").) ESC's assertion of a variety of counterclaims against TForce, but not RR Donnelly, underscores this point. (See id. at 16-17.) TForce evidently produced the APA to ESC in discovery. (See Docket Entry 31 at 4-5.) ESC has reviewed the APA and crafted several arguments related to it, both in its Amended Answer and Counterclaims and in its Brief in Opposition (see Docket Entry 17 at 5-6; Docket Entry 29 at 6-9). The Court should thus decline to elevate form over substance and delay or deprive the parties of an adjudication on the merits based solely on a semantic argument about the specificity of the Complaint's allegations, which ESC chose not to

---

3 Although TForce moves for partial summary judgment on its unjust enrichment claim, not its breach of contract claim, the Court may presume that ESC intends this argument to apply to Tforce's unjust enrichment claim, as TForce also brings that claim as a result of its acquisition of RR Donnelly's assets.

9

raise at the pleading stage. See, e.g., Brown v. Ward, 438 F.2d 1285, 1286 (4th Cir. 1970) (upholding decision permitting plaintiff to "recover as an employee of defendant, rather than as an invitee or guest as alleged in the pleadings . . . because the pleadings may be amended even after verdict to make them conform to the proof").

In the standing section of its Brief in Opposition, ESC raises the additional argument that, because TForce "utterly failed to plead standing as a valid third-party assignee" (Docket Entry 29 at 6), the Court should deny the Summary Judgment Motion because "a case may not proceed on an unpleaded theory of recovery" (id. at 5 (citing Lee v. Certainteed Corp., 123 F. Supp, 3d 780, 794 (E.D.N.C. 2015) (internal quotation marks omitted)). In that regard, ESC asserts that TForce's claims constitute different legal theories depending on whether TForce brings those claims directly, or as an acquirer of RR Donnelly's rights. (See id. at 5-6.)

This argument falls short because, at a minimum, ESC failed to develop it and only states in a conclusory manner that TForce's failure "to plead facts to support the missing legal conclusion that TForce is a third-party assignee" (id. at 6) renders its unjust enrichment claim an "unpleaded theory of recovery" (id. (internal quotation marks omitted)). Further (as discussed above), ESC has not disputed either the existence or validity of the APA, whereby RR Donnelly assigned certain rights to TForce, rights which

10

form the basis of this action. Because ESC does not contest TForce's acquisition of rights under the APA, TForce's unjust enrichment claim does not substantively differ depending on whether or not TForce brought the claim as a subsequent acquirer of RR Donnelly's rights to payment. Moreover, ESC's contention that TForce's claims constitute different "theories" of recovery because TForce acquired its rights via a contract conflates a theory of recovery with the factual basis underpinning that theory. Finally, even if TForce's claims as a subsequent acquirer did meaningfully differ from those TForce presented in its Complaint (and they do not), the Court should deem the Complaint constructively amended because ESC addressed the APA (and TForce's acquisition of rights thereunder) in its Amended Answer and Counterclaims and both parties addressed the subject in their summary judgment briefs. See, e.g., Whitaker v. T.J. Snow Co., 151 F.3d 661, 663 (7th Cir. 1998) ("Because both parties squarely addressed the [] theory in their summary judgment briefs, the complaint was constructively amended to include that claim.").

In sum, the Court should reject ESC's standing argument.

### C. Unjust Enrichment

TForce first moves for summary judgment "on its [c]laim [f]or [r]ecovery of the [a]mount [p]aid to U.S. Customs on ESC's [b]ehalf." (Docket Entry 28 at 14 (bold font omitted); see also id. at 15 ("[S]ummary judgment is proper against ESC for

11

$436,381.19.").) Although TForce did not state so expressly, this sum represents Tforce's unjust enrichment claim. (See, e.g., Docket Entry 1 at 7 (seeking damages of $439,760.07 for unjust enrichment); Docket Entry 28 at 10 (revising unjust enrichment claim to $436,381.19); Docket Entry 28-2 at 22 (deposition testimony reflecting Customs overpayment to ESC in amount of $436,381.19).) As described previously, the relevant allegations include that (A) RR Donnelly overpaid Customs due to a misclassification by Harry Long, (B) ESC only reimbursed RR Donnelly in an amount of the correct classification, and (C) Customs issued a refund to ESC instead of RR Donnelly when Harry Long corrected the tariff classification. (See Docket Entry 28 at 9-10.) ESC has not disputed the merits of this claim (see Docket Entry 28 at 10; Docket Entry 28-1 at 56-57; Docket Entry 29 at 3-4),[4] instead contending only that it "has already paid RR Donnelly a portion of these overcharges" (Docket Entry 29 at 3), and retains

---

[4] ESC did not raise any argument as to whether the refund underlying the unjust enrichment claim constitutes an "Account Receivable" subject to the APA notwithstanding the issuance of the refund to ESC subsequent to the closing date of the APA. (See Docket Entry 29 at 7 (noting that "all of the actions taken by ESC and Harry Long to correct the misclassification of products with Customs . . . occurred well after November 1, 2020" but in conjunction with argument about Tforce's alleged assumption of liability, not status of refunds as accounts receivable).) Under these circumstances, the Court should proceed in accordance with the interpretation put forward by TForce. See, e.g., United States v. Sineneng-Smith, __ U.S. __, __, 140 S. Ct. 1575, 1579 (2020) (holding that courts must "rely on the parties to frame the issues for decision").

12

the right "to set off its [counter]claims" against this sum (id. at 4).

As a preliminary matter, neither party directly addresses choice of law. (See Docket Entry 28 at 14 (citing North Carolina law for assignment of contract); Docket Entry 29 at 11-14 (citing Delaware and North Carolina law for potential affirmative defenses).) RR Donnelly is a Delaware corporation (see Docket Entry 28-14 at 12), ESC is a North Carolina entity (see Docket Entry 1 at 2), and TForce is a Delaware corporation with its principal place of business in Illinois (see id.), which acquired the assets of RR Donnelly pursuant to a contract governed by Illinois law (see Docket Entry 28-14 at 57). The events or omissions giving rise to the unjust enrichment claim occurred in part in Delaware (presumably from where RR Donnelly submitted the overpayment to Customs) and in North Carolina (where ESC received the refund). The Court therefore must determine which state's law of unjust enrichment governs.

A federal court sitting in diversity applies the choice of law rules of the state in which it sits. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). In North Carolina, "[t]he most traditional conflict of law doctrine . . . is *lex loci*, which provides that matters affecting the substantial rights of the parties are determined by *lex loci*, the law of the situs of the claim." Warren Cnty. Dep't of Soc. Servs. on behalf of Glenn v.

13

<u>Garrelts</u>, 2021-NCCOA-275, ¶ 11, 278 N.C. App. 140, 143 (internal quotations omitted) (citing <u>Boudreau v. Baughman</u>, 322 N.C. 331, 335 (1988)); <u>see also</u> <u>Arabian Am. Oil Co. v. Anderson</u>, No. 88-3574, 873 F.2d 1437 (table), 1989 WL 37405, at *1 (4th Cir. Apr. 5, 1989) (affirming district court's application of *lex loci* to unjust enrichment claim under North Carolina law); <u>Taylor v. Walter Kidde Portable Equip., Inc.</u>, No. 1:21CV839, 2022 WL 4450271, at *6 n.8 (M.D.N.C. Sept. 23, 2022) ("lex loci applies to the unjust enrichment claim").

In two instances, courts applying North Carolina choice of law principles have used the place of enrichment, "the last act triggering liability," to determine the applicable law. <u>SensorRx, Inc. v. Eli Lilly & Co.</u>, No. 3:19-CV-643, 2022 WL 4480701, at *4 (W.D.N.C. Sept. 26, 2022); <u>accord</u> <u>Arabian Am. Oil</u>, 1989 WL 37405, at *1; <u>see also</u> Restatement (First) of Conflict of Laws § 453 (Am. L. Inst. 1934) ("When a person is alleged to have been unjustly enriched, the law of the place of enrichment determines whether he is under a duty to repay the amount by which he has been enriched."). This practice appears consistent across other jurisdictions. <u>See, e.g.</u>, <u>HSBC Bank (Uruguay) S.A. v. Seaboard Corp.</u>, No. 21-CV-2435, 2022 WL 4447416, at *12 (D. Kan. Sept. 23, 2022) (Kansas); <u>Auge v. Stryker Corp.</u>, Civ. Action No. 14-1089, 2021 WL 3322344, at *2 (D.N.M. Aug. 2, 2021) (New Mexico); <u>In re Blackbaud, Inc., Customer Data Breach Litig.</u>, 567 F. Supp. 3d 667,

678 (D.S.C. 2021) (South Carolina); <u>Van Rensselaer v. General</u> <u>Motors Corp.</u>, 223 F. Supp. 323, 329 (E.D. Mich. 1962) (Michigan), <u>aff'd</u>, 324 F.2d 354 (6th Cir. 1963); <u>Wilson & Co. v. Douredoure</u>, 154 F.2d 442, 444 (3d Cir. 1946) (Pennsylvania). Accordingly, the Court should consider North Carolina law to govern TForce's unjust enrichment claim.

Under North Carolina law, "unjust enrichment is a claim in quasi contract or a contract implied in law." <u>Butler v. Butler</u>, 239 N.C. App. 1, 7 (2015) (internal quotations omitted). The doctrine, rooted in equity, serves to "exact the return of, or payment for, benefits received under circumstances where it would be unfair for the recipient to retain them without the contributor being repaid or compensated." <u>Collins v. Davis</u>, 68 N.C. App. 588, 591 (1984). A claim for unjust enrichment entails five elements:

> First, one party must confer a benefit upon the other party. Second, the benefit must not have been conferred officiously, that is it must not be conferred by an interference in the affairs of the other party in a manner that is not justified in the circumstances. Third, the benefit must not be gratuitous. Fourth, the benefit must be measurable. Last, the defendant must have consciously accepted the benefit.

<u>JPMorgan Chase Bank, Nat'l Ass'n v. Browning</u>, 230 N.C. App. 537, 541–42 (2013) (internal citations and quotation marks omitted).

TForce here has demonstrated the lack of a genuine dispute of material fact as to its unjust enrichment claim. First, RR Donnelly conferred a benefit, prepayment of tariffs to Customs, on ESC. (<u>See</u> Docket Entry 28-1 at 59; Docket Entry 28-2 at 9-10.) RR

15

Donnelly conferred this benefit neither officiously nor gratuitously; rather, the prepayment of tariffs represented an aspect of the ongoing business relationship between RR Donnelly and ESC. (See generally id.) The Court can measure the value of the benefit with relative certainty by simply looking to the refund Customs issued to ESC rather than RR Donnelly – $436,381.19. (See Docket Entry 28-2 at 22; Docket Entry 29-1 at 3.) Finally, ESC consciously accepted the benefit, as evidenced by its own admissions in a deposition. (See Docket Entry 28-1 at 56-57.)

The APA, through which TForce acquired RR Donnelly's Accounts Receivable (including for ESC), entitles TForce to collect this sum because the definition of Accounts Receivable includes "rights to payment from customers . . . ." (Docket Entry 28-14 at 13, 48.) ESC has not contested the substance of TForce's unjust enrichment claim (see Docket Entry 28-1 at 56-57; Docket Entry 29 at 3-4), instead maintaining that it "has already paid RR Donnelly a portion of these overcharges" (Docket Entry 29 at 3), but retains the right "to set off its [counter]claims" against this sum (id. at 4). ESC, however, has adduced no evidence of partial repayment, and (in any event) its proposed affirmative defenses do not undercut, or even bear on, the merits of TForce's claim. Under the circumstances, ESC must "return [], or pay[] for, benefits received [because] it would be unfair for the [ESC] to retain the[ $436,381.19] without [TForce] being repaid or compensated." Collins, 68 N.C. App. at

16

591.  The Court should therefore grant TForce summary judgment on its unjust enrichment claim.

### D. ESC's Affirmative Defenses

In light of their relevance to TForce's unjust enrichment claim, at least as it pertains to the amount of relief, the Court next should consider ESC's affirmative defenses of setoff and recoupment.  In its Summary Judgment Motion, TForce first argues that "ESC is not entitled to a set off defense against TForce because ESC had no contract with TForce and has no claim against TForce that is distinct from the transactions at issue." (Docket Entry 28 at 21.)  TForce continues that ESC cannot assert the defense of recoupment for largely the same reason: "ESC had no contract with TForce." (<u>Id.</u> at 22.)

Setoff and recoupment bear some similarities.  A party (typically the defendant) employs these affirmative defenses in pursuing a reduction in damages based on an alleged breach of a legal duty by their counterparty.  <u>See</u> <u>Crescent Foods, Inc. v. Evason Pharmacies, Inc.</u>, No. 15CVS1852, 2016 WL 6270257, at *6 (N.C. Super. Oct. 5, 2016).  In addition, these defenses require mutuality of parties; both setoff and recoupment must entail some act or omission by the party targeted by the defense.  <u>See, e.g.,</u> <u>Durham v. SMI Indus. Corp.</u>, 882 F.2d 881, 883 (4th Cir. 1989) ("North Carolina has long recognized the right of setoff where mutual debts exist ***between parties*.**" (emphasis added)); <u>In re</u>

*Carolina Acoustical & Flooring, Inc.*, 415 B.R. 186, 191 (Bankr. M.D.N.C. 2009) (noting that setoff requires "***mutuality of parties*** and of claims" (emphasis added)) (citing *In re Battery King Mfg. Co.*, Inc., 240 N.C. 586 (N.C. 1954)); *Hurst v. Everett*, 91 N.C. 399, 404-05 (1884) ("A recoupment is a defence by which a defendant . . . might recoup the damages suffered by himself from any breach ***by the plaintiff*** of the same contract." (emphasis added)).

However, setoff and recoupment "are distinct remedies with distinct legal definitions." *Crescent Foods*, 2016 WL 6270257, at *6. Setoff involves a counterdemand "arising out of a transaction independent of the plaintiff's claim." *In re Se. Eye Ctr.-Pending Matters*, No. 15CVS1648, 2016 WL 4163928, at *7 (N.C. Super. July 22, 2016). Recoupment, on the other hand, involves a counterdemand "arising out of the same transaction." *Id.*; *see also* *Hurst*, 91 N.C. at 404-05; *Settlers Edge Holding Co., LLC v. RES-NC Settlers Edge, LLC*, 250 N.C. App. 645, 660 (2016) ("Recoupment must arise out of the same transaction and involve the same parties.") (quoting with approval *Schettler v. RalRon Cap. Corp.*, 128 Nev. 209, 222 (2012)). So, whereas recoupment involves the same transaction, and setoff involves a separate transaction, both setoff and recoupment must involve the same parties. TForce thus contends that both defenses must fail here because ESC bases those defenses on allegations against RR Donnelly, not TForce. (*See* Docket Entry 28 at 21-22.)

18

In its Brief in Opposition, ESC responds by focusing almost exclusively[5] on whether and to what extent a statute of limitations applies to setoff and recoupment. (See Docket Entry 29 at 10-14.) As ESC states, "[w]hile set-off claims are subject to the statute of limitations for the underlying claim, the statute of limitations for a set-off claim does not begin to toll [sic] until the plaintiff's claim has been commenced." (Id. at 12.) ESC goes on to argue that "a claim for recoupment is not subject at all to the otherwise applicable limitations period" (id.), "defensive recoupment claims will not be time-barred" (id. at 13), "defensive set-off claims are subject to the doctrine of laches, rather than the regular statute of limitations for contract actions" (id.), and "ESC's defensive claims for set-off and recoupment are both valid and timely" (id. at 14).

---

5 In this section of its Brief in Opposition, ESC first argues that it "[h]as a [v]alid [d]efense of [p]rior [m]aterial [b]reach." (Docket Entry 29 at 9.) But TForce did not move for summary judgment on ESC's affirmative defense of prior material breach. (See Docket Entry 28 at 13.) Accordingly, the Court need not consider it. ESC conceivably could have raised this argument as grounds to deny summary judgment as to TForce's unjust enrichment claim, but, had it done so, such an argument would have failed because only in certain circumstances can a prior material breach excuse further performance **under a contract.** See Williams v. Habul, 219 N.C. App. 281, 293 (2012). ESC has cited no authority for the proposition that one party's material breach of a contract excuses the other party's unjust enrichment, in effect freeing that party to retain "benefits received under circumstances where it would be unfair for the recipient to retain them without the contributor being repaid or compensated," Collins, 68 N.C. App. at 591.

Those arguments lack significance, as TForce made no argument in its Summary Judgment Motion that ESC's defenses of setoff and recoupment should fail due to the statute of limitations. (See Docket Entry 28 at 21-23.) Rather, TForce's argument centers on the lack of mutuality of parties. (See id.) TForce contends, as described more fully above, that ESC's defenses involve allegations against RR Donnelly, a separate (non-party) entity, and that both setoff and recoupment require mutuality of parties. (See id.)

ESC failed to present an argument in opposition to TForce's party-mutuality argument. (See Docket Entry 29 at 10-14.) In one sentence, ESC notes that "the facts under which [its] defense arises are the same facts and transactions . . . on which [TForce's] original claims are based." (Id. at 14.) But even this lone sentence does not address whether the defense involves the same **parties**, the basis upon which TForce grounded its argument. When a party fails to brief an issue at summary judgment, the Court can consider the issue waived. See Nzabandora v. Rectors & Visitors of Univ. of Virginia, 749 F. App'x 173, 176 n.3 (4th Cir. 2018); Westry v. North Carolina A & T State Univ., 286 F. Supp. 2d 597, 600 (M.D.N.C. 2003), aff'd, 94 F. App'x 184 (4th Cir. 2004). Moreover, the record, as detailed above, establishes TForce's entitlement to judgment as a matter of law on ESC's affirmative defenses of setoff and recoupment.

20

<u>E. ESC's Counterclaims</u>

TForce next moves for summary judgment on ESC's counterclaims for breach of contract and negligence. (Docket Entry 28 at 15-19.) TForce presents three arguments in support: first, that the one-year statute of limitations in the Carriage of Goods at Sea Act ("COGSA") time-bars ESC's claims (<u>id.</u> at 15), second, that TForce had no contract with ESC (<u>id.</u> at 17), and third, that TForce had no duty to ESC and that none of its conduct proximately caused any harm to ESC (<u>id.</u> at 18). Because RR Donnelly's express retention of liability in the APA for conduct occurring during the relevant period precludes both ESC's breach of contract and negligence claims, the Court need not address TForce's argument as it pertains to the COGSA.[6]

---

6 Although not raised by ESC, the Court may note the ambiguity as to whether RR Donnelly, or TForce, constitutes a "carrier" within the meaning of the COGSA, as required to assert as a defense the one-year statute of limitations. "COGSA's one-year statute of limitations does not apply to every party in [a shipping] transaction. Specifically: *the carrier and the ship* shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered." <u>Dimond Rigging Co., LLC v. BDP Int'l, Inc.</u>, 914 F.3d 435, 444 (6th Cir. 2019) (internal brackets and quotation marks omitted) (emphasis in original). A "carrier" under COGSA means "the owner, manager, charterer, agent, or master of a vessel." 46 U.S.C. § 30701. "Freight forwarders generally make arrangements for the movement of cargo at the request of clients ***and are vitally different from carriers*** . . . ." <u>Prima U.S. Inc. v. Panalpina, Inc.</u>, 223 F.3d 126, 129 (2d Cir. 2000) (emphasis added). Because neither party addresses whether RR Donnelly or TForce qualify as carriers, and because the Court can resolve ESC's counterclaims on the basis of the APA, the Court need not consider this matter further.

In that regard, ESC's Amended Answer and Counterclaims allege(s) that RR Donnelly breached an oral agreement between the parties because ESC received unusable "soiled, wet, compressed, [and] damaged [sanitizing wipes], show[ing] evidence of sea salt and [] full of sea lice" (Docket Entry 17 at 16). ESC also contends that RR Donnelly's conduct, which allegedly caused ESC's receipt of compromised wipes, constitutes negligence. (See id. at 16-17.) ESC further argues that, through the APA, TForce assumed liability for RR Donnelly's acts. (See id. at 16.) TForce has countered that RR Donnelly expressly retained liability for the conduct giving rise to ESC's counterclaims. (See Docket Entry 28 at 12, 17-18.)

Section 1.2 of the APA provides that RR Donnelly "retain[ed] and [is] responsible for . . . any Liability in respect of any claims, obligations of any kind or character whatsoever . . . arising out of, relating to or otherwise in respect of the operation of the Business or the Purchased Assets to the extent such claims . . . relate[] to such operation on or prior to the Closing Date." (Docket Entry 28-14 at 15-16 (APA § 1.2(b)(iv)).) Although TForce did assume liability for certain contracts, those "Assigned Contracts [for which TForce assumed liability] . . . [must be] either included in the calculation of Closing Date Net Working Capital or [] arise[] and [] relate[] to the operation of the Business after the Closing Date." (Id. at 14-15 (APA §

22

1.2(a)(ii)).)  RR Donnelly therefore retained liabilities arising out of the operation of the business prior to the closing date, whereas TForce assumed liabilities for certain contracts either included in the closing capital figures or arising out of the operation of the business after the closing date.

ESC presents several arguments to support its contention that TForce assumed RR Donnelly's liability for the conduct at issue here.  (Docket Entry 29 at 6-9.)  First, ESC argues that "ESC's contract related to the operation of the business after the date of closing[ because] the contract with RR Donnelly was clearly not completed" by the APA's closing date.  (See id. at 7.)  To that point, ESC notes that it did not "present[] its claim for container damages [until] November 4, 2020" (id.) and that, after the closing date, ESC "continued to work with the same personnel, at the same phone numbers, at the same email addresses and under the same letterhead" (id.).

Those arguments fail for two reasons.  First, ESC conflates the contract as a whole with any liability arising thereunder.  The APA states that, for TForce to have assumed a liability from RR Donnelly, the *liability* must "relate[] to the operation of the Business after the Closing Date."  (Docket Entry 28-14 at 15 (APA § 1.2(a)(ii)).)  Here, the three shipments at issue departed China in July 2020, reached U.S. ports of entry in August 2020, and arrived at ESC's facilities in September and October 2020.  (See

23

Docket Entry 28 at 5-8; Docket Entry 28-1 at 31-32, 39, 45; Docket Entry 28-6.)  Any liability therefore would have arisen between July and August 2020, and certainly no later than October 2020.  The fact that the alleged liability relates to a contract that purportedly continued after the closing date on November 2, 2020, does not suffice, and to conclude otherwise would result in a rewriting of the APA.  Accordingly, because the alleged liability does not "relate[] to the operation of the Business after the Closing Date" (Docket Entry 28-14 at 15 (APA § 1.2(a)(ii))), TForce did not assume that liability from RR Donnelly.  To the contrary, because the liability arose prior to the Closing Date, RR Donnelly expressly retained it.  (See id. at 15-16 (APA § 1.2(b)(iv)).)

In addition to its chronological flaw, ESC's argument also fails because ESC provided no evidence that its contract with RR Donnelly constitutes an "Assigned Contract."  TForce only assumed liability for Assigned Contracts.  (See id. at 15 (APA § 1.2(a)(ii)).)  Moreover, as TForce states in its Reply to ESC's Brief in Opposition, the Assigned Contracts "listed on Schedule 1.1(a)(iv) are mainly business-to-business contracts that allow TForce to perform its freight forwarding services . . . .  No contract with ESC is on that list." (Docket Entry 31 at 9-10.)  But even if the contract with ESC appeared on the list of Assigned Contracts, TForce would not have assumed liability for the conduct at issue here because the relevant conduct predates the Closing

24

Date of the APA. (See Docket Entry 28-14 at 15-16 (APA §§ 1.2(a)(ii) and 1.2(b)(iv)).)

ESC next argues that TForce assumed RR Donnelly's liability because "TForce appears . . . to have included the ESC account in its calculation of closing date net working capital." (Docket Entry 29 at 7.) To support this position, ESC cites the deposition testimony of TForce's corporate designee. (See id.) When asked "whether *any* contracts or receivables from ESC was [sic] included in the calculation of closing date net working capital" (Docket Entry 29-3 at 6), the designee responded "I have no personal information yea or nay. My presumption is that is included." (Id.)

At the outset, this argument falters for one of the previously discussed reasons: ESC provided no evidence that its contract with RR Donnelly constitutes an "Assigned Contract," under the APA (see Docket Entry 28-14 at 15 (APA § 1.2(a)(ii))). But, in addition, the equivocation of TForce's designee when asked about contracts and receivables generally does not support the notion that TForce and RR Donnelly included the alleged *liability* at issue here in the closing capital figures. In fact, considering ESC's admission in its Brief in Opposition that it "presented its claim for damages on November 4, 2020 and negotiated over the claims thereafter" (Docket Entry 29 at 7), TForce and RR Donnelly could not have included this potential liability in the closing capital figures; the APA closed

25

days prior to ESC's demand (see Docket Entry 28-14 at 30-31 (APA §
5.1)).

In sum, the APA establishes that RR Donnelly expressly
retained the liability at issue here. ESC has not provided any
evidence that its contract with RR Donnelly constitutes an Assigned
Contract under the APA. ESC has also failed to come forward with
evidence sufficient to create a genuine issue of material fact with
regard to whether the alleged liability arose after the APA's
Closing Date and whether TForce and RR Donnelly included the
liability in the calculation of Closing Date Net Working Capital.
The Court should therefore grant TForce summary judgment on ESC's
counterclaims.

### F. ESC's Consequential Damages and Lost Profits

Because ESC's claims against TForce should not proceed, the
Court need not consider whether and to what extent ESC could
recover consequential damages and lost profits.[7] Accordingly, the
Court should deny as moot the Summary Judgment Motion as it relates
to ESC's claims for consequential damages and lost profits.

---

7 The parties principally dispute whether the COGSA limits the
liability of TForce to the value of the damaged goods. (Compare
Docket Entry 28 at 19, with Docket Entry 29 at 15.) As noted in a
prior footnote, RR Donnelly and TForce may not qualify as carriers
within the meaning of the COGSA. Neither party presents an
argument as to the applicable state law in the event COGSA did not
apply. As a result, the Court should not engage in hypothetical
choice of law analysis, particularly where, as here, the underlying
claims against TForce should not proceed.

26

## CONCLUSION

Plaintiff has shown entitlement to judgment as a matter of law.

**IT IS THEREFORE RECOMMENDED** that the Summary Judgment Motion (Docket Entry 27) be granted with regard to TForce's unjust enrichment claim, ESC's affirmative defenses of setoff and recoupment, and ESC's counterclaims for breach of contract and negligence, and be denied in part as moot with regard to ESC's claims for consequential damages and lost profits.

This 12th day of December, 2022.

          /s/ L. Patrick Auld
     **L. Patrick Auld**
**United States Magistrate Judge**
